(41 P.3d 891)
No. 87,001

In the Matter of W.H., d/o/b 02/21/83,
A Male Under the Age of 18 Years.

Opinion filed March 8, 2002.

*Kevin W. Babbit*, of Kansas Legal Services, of Emporia, for appellant W.H.

*R. Clark Allemang, II*, assistant county attorney, and *Marc Goodman*, county attorney, for appellee State of Kansas.

Before MARQUARDT, P.J., ELLIOTT, J., and PADDOCK, S.J.

PADDOCK, J.: W.H., a juvenile offender, pled guilty to the crimes of obstruction of legal process, possession of stolen property, criminal deprivation of property, domestic violence battery, and conspiracy to commit forgery.

All of the above crimes were committed by W.H. after July 1, 1999, with the exception of the crime of criminal deprivation of property, which W.H. committed on May 7, 1999.

At sentencing, the trial court classified W.H. as a chronic offender I as defined in K.S.A. 38-16,129(a)(3)(A), and W.H. was sentenced according to that classification. The trial court ordered that the sentences be served consecutively in a juvenile correctional facility, giving W.H. a controlling juvenile sentence of 40 months.

W.H. appeals the sentence imposed for the crime of criminal deprivation of property, claiming it was an illegal sentence under

K.S.A. 38-16,129. W.H. also appeals the order that the sentences be served consecutively.

Whether a sentence is illegal is a question of law over which our review is unlimited. *State v. Sisk*, 266 Kan. 41, 43, 966 P.2d 671 (1998).

An illegal sentence is a sentence imposed by a court without jurisdiction; a sentence which does not conform to a statutory provision, either in the character or the term of the punishment authorized; or a sentence which is ambiguous with respect to the time and manner in which it is to be served. *Sisk*, 266 Kan. at 43 (quoting *Carmichael v. State*, 255 Kan. 10, 16, 872 P.2d 240 [1994]).

K.S.A. 38-16,129(a) states in part: "For the purpose of committing juvenile offenders to a juvenile correctional facility, the following placements shall be applied by the judge in felony or misdemeanor cases for offenses committed after July 1, 1999."

" 'The controlling penalty provisions are those in effect at the time the offense was committed.' [Citation omitted.]" *State v. Patterson*, 257 Kan. 824, 825, 896 P.2d 1056 (1995).

As even the State concedes, the sentence handed down to W.H. for the criminal deprivation of property charge was illegal. The sentence imposed was, in the framework of *Sisk*, not in conformity with the statutory provision. The statute plainly states it applies only to offenses committed after July 1, 1999. K.S.A. 38-16,129. The criminal deprivation of property offense was committed on May 7, 1999.

The sentence must be vacated and the case remanded for resentencing pursuant to the statute in effect on May 7, 1999.

Next, W.H. contends that the Kansas Juvenile Justice Code (KJJC), K.S.A. 38-1601 *et seq.*, does not permit the trial court to order consecutive sentences.

This issue requires an interpretation of the KJJC. Interpretation of a statute is a question of law, and this court's scope of review is unlimited. See *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

In the journal entry, the trial court ordered:

"Because the cases upon which Respondent is presently being sentenced represent crimes that are separate and distinct, the sentences shall be served con-

secutively. However, in no case or cases shall the sentence or jurisdiction of the court in the juvenile aspects of the sentence [be] extended beyond the Respondent's twenty-third (23rd) birthday."

During sentencing, the trial judge explained:

"It is my decision in accordance with the standard rule that I adopted about eleven years ago that if these are separate and distinct offenses and you had the opportunity to discontinue your behavior at any time between these, then I would consider them to be separate and distinct sentences to be served. What that means my ruling is in this case that your sentences will be served consecutively meaning that the controlling term of placement with the Juvenile Justice Authority is a term of 40 months."

The KJJC does not specifically provide for consecutive sentences. On the other hand, KJJC does not specifically prohibit consecutive sentences.

W.H. asserts the failure on the part of the legislature to provide for consecutive sentences was intentional. W.H. cites the legal maxim *expressio unius est exclusio alterius*. *State v. Peal*, 20 Kan. App. 2d 816, 821, 893 P.2d 258, *rev. denied* 257 Kan. 1095 (1995), translated the phrase to mean the mention or inclusion of one implies the exclusion of another. W.H. also makes comparisons between the KJJC and the Kansas Sentencing Guidelines Act (KSGA). He states the KJJC and the KSGA have similar provisions on presumptive sentences, including how to depart and appeals from departures. W.H. further contends that unlike the KJJC, the KSGA allows the trial court to issue consecutive sentences in multiple conviction cases. W.H. opines that since the legislature did not include such a provision in the KJJC, that omission must be crucial, given the other similarities between the acts.

This case is one of first impression in Kansas. The New Jersey Supreme Court has, however, ruled on whether a juvenile can be sentenced to consecutive terms under the New Jersey Juvenile Code.

In *State in Interest of J.L.A.*, 136 N.J. 370, 643 A.2d 538 (1994), the New Jersey Supreme Court examined whether that state's juvenile code, which, like Kansas, is silent on consecutive sentences, authorized sentencing a juvenile who had committed two or more delinquent acts to consecutive sentences.

The court began its analysis by noting that imposing consecutive sentences is an inherent power of the judiciary and is derived from the common law. 136 N.J. at 374. The court continued, citing cases beginning in 1957 that stood for the proposition juveniles may receive consecutive sentences although the sentencing statutes neither permit nor prohibit such sentences. 136 N.J. at 375. In *State v. Horton*, 45 N.J. Super. 44, 48, 131 A.2d 425 (1957), the court held that if the legislature wanted to prohibit consecutive sentences for juveniles, it would have. Instead, the statute was silent. Another case the court reviewed held such sentences do not offend the notion juveniles can be rehabilitated. 136 N.J. at 375.

In upholding the consecutive sentences imposed, the New Jersey court focused its analysis on the extent to which such sentences were consistent with the objectives of the juvenile code. 136 N.J. at 376. The purposes of New Jersey's juvenile code were preserving the unity of the family, providing supervision to the juveniles, separating juveniles from their families only when necessary, securing guidance and control for juveniles, and protecting juveniles from abuse and neglect. 136 N.J. at 377.

The court summarized the purposes to be rehabilitative and penological and stated consecutive sentences for juvenile offenders can complement and reinforce such purposes. 136 N.J. at 381. As such, the court concluded its juvenile statutes should not be interpreted to forbid consecutive sentences. 136 N.J. at 382.

In the instant case, a similar approach will be used to analyze whether W.H.'s consecutive sentence was illegal. The question to be asked, then, is whether sentencing a juvenile to consecutive terms furthers the primary goals of the KJJC. According to K.S.A. 38-1601, "[t]he primary goal of the juvenile justice code is to promote public safety, hold juvenile offenders accountable for such juvenile's behavior and improve the ability of juveniles to live more productively and responsibly in the community."

Since 1996, the goals of the KJJC have been slightly altered. No longer is the juvenile's rehabilitation the main concern of the trial court at sentencing. Instead, public safety and accountability come before the nebulous goal of helping juveniles live more productive and responsible lives in the community.

If juveniles are sentenced to a juvenile correctional facility for a longer period of time because their sentences run consecutively rather than concurrently, the promotion of public safety is furthered. Juveniles cannot commit crimes against the public while incarcerated.

Juveniles also will be held more accountable for their offending behavior if their sentences are served back to back rather than at the same time. As the trial court ruled in W.H.'s case, separate offenses mean the juvenile had time to reconsider his or her actions between the offenses. If accountability is linked to time in a juvenile correctional facility, a juvenile whose sentence is to be served concurrently is held less accountable because his or her time in the juvenile correctional facility is reduced.

Finally, if the juvenile is provided appropriate counseling, anger management classes, educational opportunities, and other social service interventions, an extended time in a facility may improve the ability of the juvenile to live more productively and responsibly in the community.

Overall, the goals of the KJJC are not in conflict with the issuance of consecutive sentences.

Furthermore, if the legislature wanted to prohibit consecutive sentences for juveniles, it could have done so.

Finally, we note Juvenile Justice Authority Policy Number 4-701. While not binding on this court, the policy is relevant to this issue. The focus of the policy is the good time program of a juvenile correctional facility. Paragraph 18 of the policy states:

"18. Multiple cases. When sentences in multiple cases are ordered by the court, the JCF [Juvenile Correctional Facility] shall calculate release dates based on whether the court orders sentences to run consecutively or concurrently. The facility shall determine the beginning date for each case. From that date, the JCF shall calculate the EPRD [earliest possible release date] for each sentence."

Thus, under the goals of the Juvenile Justice Authority, consecutive sentences are not an illegal concept.

The district court did not issue an illegal sentence by ordering all of respondent's sentences to be served consecutively. The policies of the KJJC can be furthered by allowing consecutive sentences. Respondent's arguments to the contrary fail.

Sentences affirmed in part and vacated in part, and case remanded for resentencing.